*118 Opinion or the Court,
fir Judge Mills.
Nancy Davis, the present defendant in error, was bound as a poor orphan, by the county court, to William Cochran, under the following clause in an act of assembly, 1 Litt. 677:
“Every orphan who hath no estate, or not sufficient for maintenance out of the profits, shall, by order of the court of the county in which he or she resides, be bound apprentice, until the age of twenty-one years, if a boy, or of sixteen years, if a girl, to some master or mistress, who shall covenant to teach the apprentice some art art, trade or business, to be particularised in the indenture, as also reading and writing, and if a boy, common arithmetic, including the Rule of Three, and to pay him or her three pounds and ten shillings, and a decent new suit of clothes, at the expiration of the time.”
„h ¿courts'may'' in binding^’ apprentices, perform dubeyond requires6 aci
if a demurrer to a plea is 2?* oxp,ress,y but judgment i? given for record, it ° C be takan that the sustained
contract to aptraders & sonal,’ and*’ with the “aster* but tatives are bound to perQ0¿‘grei,ery nant in°Vthe indenture,
settlement by executors with the county court Is admissible between^a* creditor and the personal tives^wbe* ther made before or after ns* cie evidence ed istravit*- but" such settle-meat will thin? *nnles9 it shows the dates of the whether*8’ & made on judgments, specialties or tracts” °°n
*119 She was bound in 1812, Cochran died in 1817, and the time of apprenticeship expired in 1820; after which she, by her next friend, brought this action of covenant against the executors of Cochran, on her indentures, assigning as breaches, that “neither the said Cochran in his life, nor his executors since his death, did teach or cause her to be taught reading, writing and common arithmetic, including the Rule of Three, nor did they give to her three pounds ten shillings and decent new suit of clothes, at the expiration of her apprenticeship.”
To this the executors pleaded “covenants ed,” and “fully administered;” on both of which pleas issue was taken. They also pleaded, that said Cochran, in his lifetime, proceeded to keep and perform, and did perform his covenants, so far as he was bound to do, during his life, and that upon his death, the obligation, being entirely of a personal nature, ceased and was dissolved, whereby the executors were excused from further performance.
To this plea there was a demurrer; and although there is no order of record, expressly disposing of the demurrer, yet, as the court gave judgment for the plaintiff on the whole record, it must be taken that the murrer was sustained, and the plea overruled.
On the trial of the issues of fact, several questions were made, the most important of which will be noticed. The jury found a verdict for the plaintiff low, on both issues. The defendants in that moved for a new trial, which was overruled, and a motion made in arrest of jndgment, which was also overruled, and judgment rendered for the plaintiff to reverse which, the defendants there have prosecuted this writ of error. _
_ The motion in arrest of judgment presents no question but what -will be considered in the progress of the cause; and the motion for a new trial, except so far as it rests upon affidavits conducing to show surprise, is likewise not -worth attention, because the bill of exceptions does not profess to get forth all the evidence given linnn the trial ° upon tne mat.
It was insisted on the demurrer, as well as in arrest of judgment, that the clause in the indenture which requires the master to teach the apprentice common arithmetic, including the Rule of Three, was unauthor *120 jsed by the act of assembly, and void, and therefore the whole indenture was invalid. Whether, if this stipulation was invilid, it would vitiate the whole instrument, we will not enquire; for we are far from admittjng t[jat t{jjs daUse has no force, notwithstanding the act °f assembly does not require its insertion. It is not shown that it was inserted by mistake or fraud, qqle master was under no incapacity to make any con-which he chose, and could extend the stipulations for the benefit of the apprentice, to any extent he pleas- and no reason is perceived, why such an additional obligation might not be good at common law, though not required by the statute; and we perceive nothing which restrained the county court, who had power over infantJ from making as good a bargain in her behalf, as they could, beyond what the act requires, We consider the county court bound, not to require ^ess °f the master, than the act requires, and if they were to contract for less, to the prejudice of the orphan, there would be much reason for contending ^at the obligation was void; but there is no pretext for saying that a better bargain than that contemplated by the act, made with a person competent to contract, evidently, as this is, for the benefit of the infant, should be held to destroy the whole contract or any . - ., J * of it.
If the al representative pays a debt of an inferior grade, having no-pg^0°fc]eb™" he commits’a devastavit,
to^’ejec^evidence xvhich does not Suceto*' some facTma” terial to the point in is, su ‘
A settlement with the apl£entice, age”Sis as the statute’ *he them in per-payment to be made to
*120 It is contended by the plea that was overruled, and aiso by a' motion to instruct the jury during the trial, and on the motion in arrest of judgment, that the contract was personal, and died with the master, and that the executors were under no obligation to fulfil any part of it after his death, and therefore the breaches assigned for the failure of the executors, were erroneous, and that if the testator complied, as far as he was bound, during the co-existence of his life and the term of apprenticeship, nothing was recoverable. This attempt is founded on a mistake of the law. That there-is a trust confided personally in every master, that his instructions, and not those of another, during his capacity to instruct, shall be afforded to the apprentice, so far as teaching the trade or mystery is concerned, and that his death dissolves this obligation, cannot be debut it does not thence follow, that by the con-apprenticeship, he creates no obligation which will descend upon his representatives, after his capacb *121 ty to fulfil it further, ceases by death. The contrary is the law, and the representatives were bound, both to teach the apprentice every thing else but the trade, and pay her freedom dues, after his death, or to have it done, so far as his assets extended. See Jacob’s Die. title Apprentice.
The court, therefore, properly decided against the plaintiff in error on this point, as there was no for not learning the trade,
The next qnestion in the progress of the trial, which presents itself, is this: The writ was issued and executed in August, 1821: the plaintiff in error, to support the plea of fully administered, offered in evidence a settlement of the accounts of the executors, made by commissioners appointed by the county court, on the 3d of October, 1822, and approved by the court, and recorded at their October term, 1822. This was rejected by the court, on the application of the defendant in, error, as inadmissible. In the case of Burns vs. Burton, 1 Marsh. 349, it was decided by this court, that such settlement was admissible in a contest between a creditor and the personal representatives, whether made before or after suit brought, as prima facie evidence, on the issue of plene administravit; but it does not thence follow, that every such settlement was admissible. If such settlement be offered, and it proves or conduces to prove no facts material to the point in issue, it cannot be error to reject it; and the propriety or impropriety of rejecting this settlement, rests upon the question, whether it proved any thing in favor of the executors. There is no date to a single credit, given to the executors, nor does it appear when any of them were paid, or whether they were paid on judgments, specialties or simple contract. It is well known, that the law has marshalled the debts of a decedent; that debts of record take the preference, and are all placed on the same footing; specialties occupy the next place, and simple contracts follow; and that if an executor pays those of inferior grade, having notice of a superior debt, he is guilty of a devastavit, and is not entitled to any credit for such payments, in a contest with the holder of debts of superior grade, and that the fact of notice may cause debts of the same dignity to preponderate over others of which no notice is given.
*122 Now, the settlement offerred in this case did not prove or conduce to prove that any part of the payments made by the executors were made in discharge of any debt equal in dignity to the demand of the plaintiff below; but the contrary is rather to be interred from it. Nor does it prove or conduce to prove that any one of the payments was made previous to notice of the demand of the plaintiff in error by suit. It was. a matter of record, the construction of which, and the inferences to be drawn from it, belonged peculiarly to the court; and as it could prove nothing material to the point in issue, it would serve rather to embarrass and confuse the cause before the jury, than to shed light upon it, and the plaintiffs in error could not be prejudiced by it rejection.
The next question is, the court below admitted a conveyance of a tract of land from one of the executors in his individual capacity, to his co-executor, to be given in evidence to the juryv The admission of this deed, we conceive, was proper, under the circumstances of the case. One of the executors, who was also of counsel defending this cause,' after the settlement was rejected, as above stated, offered two notes in evidence, executed by the testator to himself, for a considerable sum of money, and stated that he offered them not as held by himself, undischarged, but as the counsel of the executors, relying upon the presumption, as they were produced by them, that they were paid off by them. To rebut this, the plaintiff below gave evidence conducing to show that the notes were executed by the decedent to the executor, for a tract of land sold; that part of the price had been forgiven; and finally, the deed was offered to show that the executor, who had first sold the land to the decedent, had sold and conveyed it to his co-executor, who could have no right thereto by the contract with the decedent; of course, the deed was properly used to show that the notes, so far from being paid, ought never to be paid by the decedent’s representatives.
The witness was introduced on the part of the plaintiffs in error, and asked whether he had any knowledge of a settlement between the widow and executrix of the decedent and the defendant in error, after her apprenticeship expired, and whether the said defendant did not acknowledge that she was paid her freedom dues of *123 three pounds ten shillings? This question was objected to, and rejected by the court, on the ground of the infancy of the defendant in error, and that no payment to her, or private settlement with her, could be good, and this decision was excepted to. It is generally true, that payment of a debt or demand to an infant, is not good, and the party who shall thus pay to the infant in person, may be compelled to pay the demand over again; but whether, in this peculiar case, as the payment is directed by the statute to be made to the infant, the payment is or ought to be an exception to that rule, is the only remaining inquiry. The statute directs the payment to the infant, and supposes some right in the infant to act for himself before he is twenty-one years of age, by acknowledging a qualified freedom. The suit of clothes was certainly intended to go to the infant, and we conceive that the three pounds ten shillings was also intended to be entrusted to him, as a small fund for necessaries, until, by the exercise of the trade acquired, a sustenance should be procured. The payment to the infant, attempted to be proved, was therefore good, and the court erred in excluding it.
For this, the judgment must be reversed with costs, and the verdict be set aside, and the cause be remanded, with directions for new proceedings to be had, not inconsistent with this opinion.
Thomas B. Monroe, Esq. presented the following petition for a rehearing:
It is possible the counsel for the defendant in error may be induced to submit this petition by his zeal for the interest of the poor orphan girl, without sufficient grounds; but the point on which the court has decided against her, is certainly new, and does, in his opinion, deserve to be again considered, before it be established for a precedent; and he will also rely, with great confidence, that the question of law alluded to does not arise in the case, and therefore, be the law as it may, the decision ought to be for her.
The first question is, does the statute cited in the opinion authorise the master to pay the cash part of the *124 freedom dues into the hands of the apprentice, during her minority? The statute, it is true, directs the payment to be made to the apprentice at the end of her service, and the court seems to hold that it does therefore recognize a right in the infant to act for herself in this respect, before she may be of mature age.- It is humbly contended, that the conclusion does not follow the premises. All infants have the right to contract in relation to all things, realty, personalty, choses in action, and their own personal services, and, consequently, to take deeds and obligations to themselves, without any statutory provision, and no other can avoid a contract with an infant. They are allowed to avoid their acts, not as an impediment, but as a privilege; therefore, by the general rules of law, this infant may have made this contract of apprenticeship in proper person, and if the covenant sued on had been delivered to her, containing the obligation to pay her, at eighteen years of age, the three pounds ten shilling, in such a case, after he had performed the covenants on her part, the law would be as imperative on the master, to pay the stipulated sum to her as it is possible for any statutory provision to have made it. But, in such case, the common law rule laid down by the court, proves that it would not be sufficient to pay it into the hands of the infant. In each case the money is payable to the infant; but how? In that manner in which all money is payable to all infants, to make it a good acquittance— by the intervention of the guardian. And the counsel would also rely, that in cases of judicial bonds, obligations taken by the functionaries of the law for the benefit of infants, it is still more emphatically required that the obligation be discharged according to the rules of law, and that payments to, or settlements with an infant, will not avail. This, it is believed, is the meaning of the statute cited, without interpretation; but if construction must be resorted to, to sustain the position, there is one rule which is deemed decisive: “The general rule, in the exposition of all acts of parliament, is this, that in all doubtful matters, and where the expression is in general terms, they are to receive such a construction as may be agreeable to the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law, or otherwise than the act does expressly declare. Therefore, in all general *125 matters, the law presumes the act did not intend to make any alteration ; for if parliament had had that design, they would have expressed it in the act.—■ Jlrcher vs. Bokenham, 11 Modern 150, Hill. 6 Ann C. Bench; 19 Viner’s Abr. 512, title Statutes, E. 6, 12th note. Coke says, “It is a good exposition of a statute, when the reason of the common law is pursued.” 2 Institutes, 147.
The effect of the delivery of the clothes to the infant, need not be discussed; because the question does not arise. The evidence offered by the defendant below, related merely to the apprentice fee of =63 10s. The infant might have bound herself by the purchase of clothes, under the head of necessaries ; ergo, the delivery of them to her in this case might have been good ; but the rule is different as to money. The common law does not bind an infant for mony borrowed, nor make his acquittance good for money received in discharge of a debt. The civil law did make a distinction in those cases where the money was afterwards beneficially employed by the infant, and where it was squandered ; but the blunt rules of the common law have no regard to any such distinction, and hold all such contracts and acquittances equally avoidable by the infant, at pleasure. Nor -is it apprehended by the counsel, that in this case the statute intended that the infant should be entrusted with her money, independent of the authority of the guardian, even on the supposition that, it was intended by the law as a “small fund for necessaries, until, by the exercise of the trade acquired, a subsistence should be procured;” for it is certainly the duty of the guardian to control the infant in the disposition of the money she may be entitled to, even in the purchase of necessaries, and also to dirict their labor, until mature
There is one circumstance in this statute deserving consideration. In the case of male apprentices, the services extend to the age of twenty-one years; and, therefore, the construction of the act would have to be still more strained, to make it work an alteration of the common law, in relation to payments made to infants; for it certainly does not apply in the case of male infants, and the construction would, therefore, have to apply only to the female. But, whatever may be the law on this it is confidently relied, that the *126 tion does not arise on the record of the cause. There ¡jre j.w0 0f exceptions in the record. The first is taken to the opinion of the court overruling the motion in arrest of judgment; the other to the opinion of the court overruling a motion for a new trial, in which, and no where else in the record, is the abové question attempted to be presented, and it is confidently contended that it is not here sufficiently made.
It is certainly an universal rule, without exception, that a new trial cannot be granted for any other cause, nor on any other ground, than what the plaintiff may assign in his motion; and it is not believed to be possible to make any of the grounds assigned cover the present question. They are as follows : u 1st. The verdict is contrary to law, upon both or either of the issues; 2d, it is against evidence; 3d, because the defendants are surprised, on the ground of the court’s rejecting the settlement of the commissioners, made of Cochran’s estate, under the authority of the county court of Montgomery, and are surprised at many other matters and things that occurred upon the trial, and which will, if necessary, be made out by affidavit.” The two first grounds have clearly no reference to the matter in debate, nor can the last ground embrace it, even by the general terms with which it concludes ; for they are made with reference to the affidavit filed, which could not contain such a ground, and which, in fact, has no allusion to the subject. It woidd seem, then, to follow, that the circuit court ought not to have granted a new trial fpr this cause, however sufficient it may have been, and the court has already overruled each of the causes assigned.
It is true, this matter has been thrown into the bill of exceptions taken to the opinion of the court overruling the application for a new trial, and the question might be made, whether (although it could not avail the party in his motion for a new trial) it might avail him in the present assignment of error. In answer to this, the counsel insists that, so far from the exception being good on error, in the present state of the case, it is not .sufficiently taken to have availed in the motion below, even had the grounds embraced it.
The judgment was rendered on the 16th of March, (see record, p. 6,) and afterwards, on the 22d day of the same month, the defendants, by their attorney, filed *127 their bill of exceptions, &c. in which all that is said on the subject on which the court has decided the cause, is in these words: “ Gabriel Reath, who had been before sworn, was asked if he had any knowledge of a settlement between Mr. Trylee and the plaintiff, after she was out of her apprenticeship; and that then and there the plaintiff acknowledged she was paid her apprentice fee of £3 10s. and was a small sum indebted to Mr. Trylee. But the counsel for the plaintiff objected to the question, on the ground of the plaintiff’s infancy, which objection the court sustained.” And the defendants then acquiesced, and the counsel now insists that they must forever acquiesce. But after the verdict was returned, after his motions in arrest of judgment and for a new trial were overruled, and days after the judgment in chief was rendered, he fileda bill of exceptions, in which he states the occurrence as above quoted, and in the conclusion says, “to which séveral opinions of the court against the defendants, they except.'” When except? Obviously at the time the bill of exceptions was tendered. It is admitted, that it is recited that the objection to the testimony was taken by the plaintiff on the trial, and then sustained; but there is no recital that the defendant then objected to the opinion of the court, or in any otherwise reserved the point. Both the objection and exception to the opinion of the court were postponed until the exception was actually filed, many days after. This, it is believed, is not sufficient, on any state of the case; most especially, when assigned, for error in the appellate court for the first time, which is certainly the present case. Bills of exceptions did not exist at common law; they are by statute 13th of .Edward I, ch. 31. See Statutes at large. This statute, it is true, does not expressly provide when the exception shall be taken; but the contemporaneous construction was, that it must be taken before judgment.— Coke says, “Although no time be appointed by the act, when the justices shall put their seals, the party must pray the same before judgment; but if they deny it, then they may be commanded, after judgment, to put their seals, and then putting their seals after judgment shall be sufficient.” 2 Institutes, 427. Lord Holt fully states the reason, in Wright vs. Sharp, where he said to the party offering to take the exception after judgment, “ You should have insisted on your exception *128 a¿ the trial; you waive it if you acquiesce, and shall not l’esort back to your exception, after verdict against you, when, perhaps, if you had stood to your exception, the party had other evidence, and need not have put the cause on this point” Salk. 228; Bac. Abr. title Bills of Exceptions, and authorities there cited; Fitzherbert’s N. B. 22; 8 Burrows, 1692. In our case, the counsel for the orphan, when the question was asked, might have objected exclusively on legal grounds, without knowing what probably might have been the answer of the witness; but had an exception been tendered, he would have been induced to consult bis client, who might have relied that the witness would have answered nothing against her, or she might have been able, by other evidence, to repel the answer, whatever it might have been; or the counsel might have chosen to rely on the circumstances of the case, and intrinsic feebleness of that species of evidence, or he might have waived the objection, merely to avoid a new trial or revision in this court, where the extra expenses must exceed the sum to which the evidence related.
It is possible that it may be apprehended the authorities which have been cited, apply only to the question, whether the judge ought or ought not to sign the bill of exceptions when tendered, arid that if he sign it, it shall avail, though not in time. It is not believed the authorities and statute would warrant such a construction; but this question was directly decided in the cáse of Walton vs. the United States, in the supreme court of the United States, at the last term, in which they held that unless it appeared from the record that the exception was actually taken before verdict, it could not avail. The bill of exception, they say, may be filed at any time during the term; but it must purport, on its face, that the exception to the error complained of was taken at the proper moment, and that otherwise it will not avail. . This opinion is not published; but the counsel would hazard this cause on his recollection of the case, and his opinion that the decision is completely in point.
A rehearing is respectfully asked.
MONROE, for Deft.
But the court, on consideration, overruled the petition.